HIGGINS, et al, Appellants, v. HIGGINS, et al, Respondents

(20 N. W.2d 523.)

(File No. 8791.   Opinion filed November 10, 1945.)

Rehearing Denied January 5, 1946.

18

**H. F. Fellows,** of Rapid City, for Appellants.
**Walter G. Miser,** of Rapid City, for Respondents.

RUDOLPH, J. Plaintiffs brought this action to quiet title to certain real estate. Plaintiffs' claim of title is based upon the will of their deceased grandfather, Marsh Higgins. The will, in so far as here material, provides:

"All the rest and remainder of my estate, both real and personal wheresoever the same may be situate, I give, devise and bequeath to my four (4) grandchildren, viz: Elsie Jean Higgins, Janice Higgins, Joan Higgins and Janelle Higgins, share and share alike.

"I hereby appoint my brother J. M. Higgins as Trustee for my said grandchildren; giving him full authority to pay all my just debts and collect all moneys due me or to become due me and to manage my estate for the benefit of my said grandchildren aforesaid. In the event of the death of my brother J. M. Higgins, I hereby appoint the First National

Bank of the Black Hills, Rapid City, or its qualified agent to act as Trustee for my said grandchildren.

"In the event of the death of any of my grandchildren without issue, his or her share shall be divided equally between the remaining grandchildren, and in the event of the birth of other grandchildren not herein named, the said grandchildren shall become heirs of my estate and share equally with those named herein, in so much of the estate as remains at the time of his or her birth."

This will was admitted to probate in the county court of Pennington county. On January 16, 1940, the county court made an order of partial distribution as follows: "It is further ordered, adjudged and decreed that the real and personal property hereinafter described be distributed to, and the executor of said estate is hereby ordered and required to pay and deliver to J. M. Higgins, trustee, of Owanka, South Dakota, and to his successors in trust, in trust nevertheless, to and for the uses and purposes stated in said Will of Marsh Higgins, deceased, that is to say in trust for the said Elsie Jean Higgins, Janice Higgins, Joan Higgins, and Janelle Higgins, the grandchildren of Marsh Higgins, deceased; the said property being distributed to the said trustee and to his successors in trust, to pay the just debts of, to collect all moneys due or to become due to, and to manage the estate of, the said Marsh Higgins, deceased, for the benefit of the said grandchildren, and in the event of the death of any of said granchildren, without issue, to divide the share of such deceased grandchild equally between the remaining grandchildren, and, in the event of the birth of other grandchildren of the said Marsh Higgins, deceased, not hereinbefore named, to give to such other grandchild an equal share with those grandchildren hereinbefore named in so much of the estate as shall remain at the time of his or her birth."

On December 30, 1940, the county court made a final decree of distribution from which no appeal was taken wherein the remaining estate was distributed to J. M. Higgins, trustee, by language identical to that contained in the decree of partial distribution above set out. It was the con-

tention of the plaintiffs in the trial court and it is their present contention upon appeal to this court, that under the terms of the will of Marsh Higgins, deceased, they are entitled to a holding of the court to the effect that they are the fee owners of the property involved and entitled to its exclusive possession and control free from any alleged trust.

██ This court has recently held, in conformity with prior decisions, that the county court has the equitable power in the course of the administration of an estate to construe a will so far as such construction might be necessary in order to administer such estate and distribute the same to the parties entitled thereto. Kirby v. Western Surety Co., 70 S. D., 483, 19 N. W.2d 12. It is clear, we believe, that the county court by its decree of distribution has determined that it was the intention of the testator that the legal title to the property should be vested in a trustee, for the benefit not only of grandchildren in being at the itme of distribution, but for the benefit also of grandchildren to be born in the future, and the court so distributed the property. In so doing the court was acting within its jurisdiction, under the rule established by this court, and the decree not having been appealed from is not subject to attack, in this respect, in this proceeding.

█ The difficult question presented is whether the trust as set up by the decree of the county court is a valid trust. We start with the premise that the trust is for the benefit of grandchildren to be born as well as grandchildren in existence at the time the decree was entered. This premise is necessary because the decree which was, of course, entered after the death of the testator distributes the property for the benefit of any grandchildren to be born as well as the named grandchildren. It, therefore, appears that we have a trust created for the benefit of a class, i. e., grandchildren in existence and grandchildren to be born. The members of a definite class of persons can be beneficiaries of a trust. Grandchildren in existence and to be born constitutes a definite class within the meaning of this rule. Scott on Trusts, Section 112.

A further question presented relates to the termination of the trust period. The trial court determined that the trust period terminated upon the death of Maurice Higgins, the only son of the testator, and this determination is assigned as error. Since the decree of the county court did not fix the termination of the trust period, the court may look to the will to determine this question. In re Gardiner's Estate, 45 Cal. App. 2d 559, 114 P.2d 643. In construing the will the court may take "into view the circumstances under which it was made," in addition to the words of the will. SDC 56.0302. The record discloses that the testator had only one child, Maurice Higgins, and that the trust created could be for the benefit of no grandchildren of the testator other than those conceived by Maurice. But it is clear from the terms of the will that the testator intended that Maurice take no part of his estate, except $50 as provided in the will, and it is also clear that the testator did not intend or desire that Maurice have any part in the control or care of his estate while being held in trust for the children and future children of Maurice, if any, as the testator named his brother for this purpose. In our opinion, it would be unreasonable to hold that the testator intended the trust period should never terminate; but obviously it was not intended that the trust period terminate before the members of the class were definitely ascertainable upon the death of Maurice. The death of Maurice definitely determined the members of the class which were to take the estate from the trustee, as upon his death the possibility of other grandchildren of the testator ceased. Nor is there anything in the will which indicates an intention by the testator to extend the trust period beyond the time when the members of the class is definitely fixed by the death of Maurice. The holding that the trust period terminates upon the death of Maurice is in accord with the apparent intention and desire of the testator that Maurice neither benefit or have any part in the care or management of his estate. We, therefore, believe that it is a reasonable construction of the will to hold that the trust terminates upon the death of Maurice. Such construction does no violence to the language of the will, is consonant

with the apparent intention and desire of the testator and in accord with the rule of construction of wills provided in SDC 56.0301.

■ From the foregoing it follows that the entire estate in the property vests in the grandchildren upon the death of Maurice Higgins, and since Maurice Higgins was a person in being at the creation of the trust there was not, in any event, a suspension of the power of alienation contrary to the provisions of SDC 51.0231 or SDC 51.0232, which prohibit the creation of a condition or future interest which suspends the absolute power of alienation for a longer period than during the continuance of the lives of persons in being at the creation of the condition or future interest.

■■ It is contended that the trust is void by reason of indefiniteness and uncertainty. To be a valid trust its provisions must be reasonably certain as to the property, the beneficiaries and the objects. Chicago, Milwaukee & St. Paul Railway Co. v. Des Moines Union Railway Co.,, 254 U. S. 196, 41 S. Ct. 81, 65 L. Ed. 219. In this case there is no uncertainty as to the property, and the beneficiaries are definite in that they constitute a class the members of which can be ascertained. Nor do we believe the trust is uncertain as to its object. As we construe the decree setting over the property to the trustee, he is to hold the legal title during the life of Maurice, collect all money due or to become due, pay the debts of the trust estate, manage the property for the benefit of the grandchildren beneficiaries, with a remainder in the grandchildren, born and to be born. Reading the decree in the light of the will we think it reasonable to hold that it was the intention of the testator that the grandchildren have a present benefit from the property at least to the extent of the income therefrom. The will in the paragraph first set out above bequeaths the property to the grandchildren, it then proceeds to set up the trust with the express provision that the property should be managed for "the benefit of my said grandchildren," then follows the provision as to any future grandchildren which provides that they "share equally with those named herein, in so much of the estate as remains at the time of his or her

birth." Obviously the will is not artistically drawn, the record discloses that it is not the work of a lawyer, however, in view of the above provisions we think it a reasonable construction to hold that it was the intention of the testator that the trustee should be empowered to apply at least the income from the trust property to the use of the living beneficiaries. As thus construed the trust falls within the purposes for which a trust in real property may be created under the provisions of SDC 59.0301.

The judgment appealed from is affirmed.

SMITH, P.J. and ROBERTS and POLLEY, JJ., concur.

SICKEL, J., dissents.

SICKEL, J. (dissenting). It is a general rule that a provision in a will for after-born children applies only to those children who are born before the death of the testator, unless a contrary intention clearly appears from the terms of the will. 69 C. J., Wills §§ 1269, 1272, 1275; Annotation, 49 A. L. R. 177. This will provides that after-born children shall share equally "in so much of the estate as remains at the time of his or her birth." This clause, I believe, shows that the testator intended that children born after the death of testator should have the right to take under the will.

The question in this case is whether the distribution was postponed by the terms of the will until the possibility of the birth of other grandchildren became extinct. The will does not provide that the grandchildren living at the death of Maurice Higgins shall be entitled to take under it. Neither does it provide that distribution shall be deferred to any determinable future time, or at all. On the contrary, the provision of the will that after-born grandchildren share only in that part of the estate that remains at the time of their birth, shows that the distribution of the estate to the devisees shall not be deferred to await the possibility of the birth of other grandchildren.

The decree of distribution made by the county court orders that the executor shall "pay and deliver" all the property of the estate to the trustees named in the will "to and for the uses and purposes stated in said will." The decree

then recites the provisions of the will without any substantial change. Therefore, I am unable to see how the decree has in any way affected the interpretation of the will.